# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| CONTRACTOR TECHNOLOGY, LTD., | § | **CIVIL ACTION NO. H-05-3212** |
| | § | Bankruptcy Case No. 05-37623-H1-7 |
| Debtor. | § | |

## OPINION

Appellant St. Paul Traveler's Insurance Co. ("St. Paul") appeals from the United States Bankruptcy Court's orders[1] authorizing Trustee Ronald J. Sommers to employ Porter & Hedges, L.L.P. ("P&H") as special litigation counsel for the estate of Debtor Contractor Technology, Ltd. ("Debtor" or "CTL"). The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

St. Paul, the sole objector to the Bankruptcy Court's orders, contends that the Bankruptcy Court erred in approving the Trustee's employment of P&H as special litigation counsel to pursue avoidance actions on behalf of the estate under a contingency fee arrangement. St. Paul contends that the Bankruptcy Court's approval of P&H violates 11 U.S.C. § 327(a) because P&H represents interests adverse to the Debtor's estate, because P&H is not disinterested, and because P&H has an "actual" conflict of interest. St. Paul also

---

[1]     These orders are Order Granting in Part and Denying in Part Trustee's Application to Employ Porter & Hedges, L.L.P. as Special Litigation Counsel and Strategic Capital Corporation as Litigation Support Professional Pursuant to 11 U.S.C. § 328(a) [Bankr. Doc. # 479], dated August 17, 2005, and the Order Amending Order Authorizing Employment of Porter & Hedges, L.L.P. and Strategic Capital Corporation [Bankr. Doc. # 528], dated August 31, 2005.

argues that the contingency fee arrangement is improvident or unreasonable in violation of 11 U.S.C. § 328(a) because there was insufficient information about the potential claims available to the Debtor at the time of the approval and the contingency fee may be unfairly large.

The Court has carefully considered the full record in this case, the counsel's oral arguments, and applicable legal authorities. The issues presented are significant. Ideally, the Trustee would have selected special counsel with no relationship to the creditors of the estate and thus avoided any question of a conflict of interest or appearance of such a conflict.[2] The Court concludes nevertheless, on the basis of its own and the Bankruptcy Court's detailed review of the somewhat unique circumstances of this case, that the Bankruptcy Court's finding that P&H does not have an actual conflict of interest was not clearly erroneous. The Court further holds that the Bankruptcy Court's approval of P&H's employment as special counsel on a contingency fee basis was within that court's wide discretion. The Court accordingly **affirms** the Bankruptcy Court's decision.

---

[2]     It is noted that more than 400 creditors filed claims against the estate. Of the twenty largest unsecured creditors, thirteen are entities located in the Southern District of Texas. Most, if not all, of the major bankruptcy law firms in the district represent at least one creditor of the estate. Therefore, as a practical matter, it is unlikely that the Trustee could have found a law firm in the Houston area to serve as special counsel to the Trustee that was willing to accept this difficult representation, that had the necessary expertise and staffing, and that did not represent a creditor of the estate.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

This appeal arises from a bankruptcy case filed under Chapter 11 of the Bankruptcy Code by the Debtor CTL on May 13, 2005.  CTL was a privately-held construction company engaged primarily on public works jobs, such as road work and pipe construction.  The Debtor performed work for the Texas Department of Transportation, the City of Houston, Metropolitan Transit Authority, and Harris County, Texas.

At the time the company filed its bankruptcy petition, its counsel knew little about the company.  For instance, counsel did not know if the Debtor's primary bank held a lien on the accounts receivable.  The Debtor did not file timely schedules and statements of affairs, was unable to file a creditor matrix, was unable to give an accurate estimate of its cash needs for the first few weeks after filing the petition, and paid numerous pre-petition debts after its petition was filed.

It soon became apparent that the Debtor's records and financial information were in such disarray that it could not account for its funds.  As a result, the Bankruptcy Court approved employment of Strategic Capital Corporation ("SCC") as the Debtor's financial consultant.  SCC reported that almost $2,000,000 in cash on hand at the time the bankruptcy case was filed was used to pay pre-petition debts.  SCC stated that, based on the condition of the Debtor's records at that time, it could not determine which of CTL's construction projects were profitable.  SCC opined that the liquidity of the bankruptcy estate would be dependent upon the success of avoidance claims.

On June 23, 2005, the Bankruptcy Court granted the Debtor's motion to convert the case to a Chapter 7 proceeding.  It is undisputed that the estate's only assets are avoidance claims and possibly other causes of action against insiders and creditors of the Debtor.

In connection with various CTL construction contracts, St. Paul issued payment and performance bonds to guarantee payment to subcontractors in the event of CTL's default. Numerous subcontractors have not been paid for their work and have made claims under St. Paul's performance bonds.  In addition, subcontractors that received payment from CTL in violation of the avoidance provisions of the Bankruptcy Code and that repay the estate are then asserting claims against St. Paul's bond for the funds repaid to the estate.  St. Paul has paid many of these claims and seeks reimbursement from the estate. St. Paul's claims against the estate exceed $11 million, significantly more than any other claimant.

The Bankruptcy Court appointed Ronald J. Sommers, Esq. as Chapter 7 trustee on June 23, 2005.  On July 25, 2005, the Bankruptcy Court granted the Trustee's application to employ Nathan Sommers Jacobs, P.C. as his general bankruptcy counsel on an hourly fee basis.

On July 14, 2005, the Trustee filed an application to employ as a team P&H as special litigation counsel and SCC as a financial advisor for litigation analysis.  The Trustee proposed to pay P&H and SCC a single contingency fee based on monies collected through litigation of bankruptcy avoidance and other claims owned by the estate under 11 U.S.C. §§ 544, 547, 548 and 549, as well as other applicable state and federal laws.  SCC is expected to provide financial analysis and litigation support to the Trustee and to P&H, and

P&H is responsible for litigating the claims identified by SCC.  The Trustee stated that he chose P&H because of its expertise in bankruptcy-related litigation and because the firm was willing to undertake very speculative litigation on a contingency fee basis.  The proposed contingency arrangement involves payment jointly to P&H and SCC in a "stair-step" arrangement with fees ranging from 20% for pre-litigation settlements to 40% for recoveries after appeal.[3]

The Trustee informed the Bankruptcy Court in the Employment Applications that P&H had appeared in this bankruptcy case on behalf of eight creditors of the Debtor.  In total, P&H has filed proofs of claim for four of these creditors, at least one of which has been paid by St. Paul under a construction bond.  Other than the creditors' requests for payment of sums allegedly due for work performed on CTL's construction projects, the eight creditors have no disputes with the Debtor or the Trustee.

---

[3]     The Bankruptcy Court approved the parties' agreement that P&H and SCC would be paid the following percentages of the recovery:

- If the claim is settled prior to filing a complaint: 20%;

- If a complaint is filed, but the claim is settled (i) prior to the filing of an answer and (ii) prior to the Rule 26 conference:  25%;

- Once an answer has been filed or the Rule 26 conference has occurred:
  - If the claim is settled before the first to occur of  (i) 30 days after an answer has been filed or (ii) 30 days after the Rule 26 conference occurs: 30%;
  - If the claim is settled after the first to occur of  (i) 30 days after an answer has been filed or (ii) 30 days after the Rule 26 conference occurs:  35%;

- If there is an appeal: 40%.

In its objection to the Employment Application filed in the Bankruptcy Court, St. Paul asserted simply that P&H could have a "potential conflict of interest" if P&H were to analyze data relevant to its eight creditor clients.[4]   After conducting an evidentiary hearing on July 25, 2005, the Bankruptcy Court authorized P&H and SCC's employment ("Employment Order").   In the Employment Order, the Bankruptcy Court authorized P&H to analyze and prosecute avoidance and other actions in accordance with the original motion but specifically carved out the eight P&H creditor-clients.  Specifically, the Employment Order provided that P&H was not to provide "any analysis, evaluation, recommendation or input to the Trustee" with respect to those eight creditors, and that P&H may not represent the estate or its creditor-clients in any avoidance litigation on behalf of the estate.[5]   The Bankruptcy Court also approved SCC's employment as the financial advisor and investigator, and approved the requested stair-step contingency fee proposal.

The Employment Order, incorporating the letter agreement between the Trustee, P&H and SCC, requires that SCC and P&H provide all relevant financial analysis to the Trustee on potential claims, even claims that P&H and SCC do not prosecute.  The Trustee has the right to use his general bankruptcy counsel or retain other counsel with respect to any potential creditor defendants, including the eight P&H clients, with respect to claims that

---

[4]      Because SCC has identified three P&H clients who received potentially avoidable transfers, St. Paul now contends that P&H has an "actual" conflict of interest.

[5]      St. Paul does not contend that P&H has violated the prohibition that it not do any analysis concerning the eight client-creditors.

P&H and SCC do not pursue.  By amended order entered August 31, 2005, the Bankruptcy Court clarified its ruling by tracking the language of 11 U.S.C. § 328(a) regarding his authority to alter the compensation to P&H and SCC, if necessary.

St. Paul requested and obtained leave to appeal the Bankruptcy Court's authorization of P&H's employment.  The matter has been fully briefed and argued, and it is now ripe for decision.

No party sought a stay, and P&H has actively pursued its mandate.  P&H filed thirty-nine adversary proceedings on the Trustee's behalf claiming creditors received post-petition payments in violation of 11 U.S.C. § 549.[6]  P&H has obtained or sought approval on behalf of the Trustee to compromise seventeen § 549 avoidance actions.  Thus far, P&H has filed two interim fee applications, and at least one has been approved.  St. Paul does not object to the proposed settlements or to the amount of fees being sought by P&H.

P&H also has filed three claims under federal and state law against insiders and an affiliate of St. Paul.  Those proceedings are currently pending.  P&H also states that the Trustee intends to file actions for recovery of voidable preference payments under 11 U.S.C. § 547, but the filing of those claims was delayed while the Trustee awaited the Bankruptcy Court's ruling on a construction trust fund issue.  Finally, P&H announced at oral argument that it will recommend that the Trustee file suit against St. Paul on unspecified causes of action.

---

[6]     Some of these creditors have filed third party claims against St. Paul.

Counsel for both sides indicated at oral argument that the Debtor's financial records remain woefully incomplete despite SCC's and the Trustee's document reconstruction efforts. Accordingly, P&H acknowledges that its strongest claims against creditors are under § 547 where the Trustee may rely on a presumption that the Debtor was insolvent and § 549 where the Debtor's alleged insolvency is not an element of the cause of action. P&H also noted that the lack of business records appears – at least at this juncture – to pose an insurmountable hurdle to meeting the Trustee's burden of proof on the issue of insolvency for purposes of any § 548 claims that might exist.

## II.   STANDARD OF REVIEW

The Court reviews a bankruptcy judge's conclusions of law and mixed questions of law and fact *de novo*, while the bankruptcy court's findings of fact are reviewed under the "clearly erroneous" standard. *In re Mirant Corp.*, 440 F.3d 238, 245 (5th Cir. 2006); *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003). A finding of fact is clearly erroneous when, even in the presence of evidence to support it, the reviewing court is left with a "firm and definite conviction" that the Bankruptcy Court has made an error. *In re Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005); *Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997).

The parties, citing *In re Consolidated Bankshares, Inc.*, 785 F.2d 1249, 1256 (5th Cir. 1986), agree that the determination of the conflict issues in this appeal is a question of fact. A Bankruptcy Court's findings on conflict of interest issues are entitled to great deference as the bankruptcy judge "is on the front line, in the best position to gauge the ongoing

interplay of factors and to make the delicate judgment calls which such a decision entails."
*In re AroChem Corp.*, 176 F.3d 610, 628 (2d Cir. 1999).

This Court "may affirm if there are grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." *In re Cueva*, 371 F.3d 232, 236 (5th Cir. 2004) (quoting *Matter of Besing*, 981 F.2d 1488, 1494 (5th Cir.), *cert. denied*, 510 U.S. 821 (1993)).

III.   **ANALYSIS**

St. Paul contends that the Bankruptcy Court's findings that P&H is qualified to serve as special counsel to prosecute avoidance and other actions against defendants other than P&H's eight creditor clients is clearly erroneous.   St. Paul contends that P&H's representation of the eight creditors creates an "actual" conflict of interest, renders P&H not "disinterested," and results in P&H representing parties with "interests adverse" to the Debtor, each of which should disqualify P&H from serving as special counsel to the Debtor under 11 U.S.C. § 327.   St. Paul also complains that the contingency fee arrangement is improvident or not reasonable and the Bankruptcy Court's approval under 11 U.S.C. § 328(a) is error.

A.   **Section 327 and Employment as Trustee's Special Counsel**

1.   **Legal Standards**

Section 327(a) of the Bankruptcy Code provides that a trustee may, with the Court's approval, employ an attorney to represent him in carrying out his statutory duties. 11 U.S.C. § 327(a). This provision applies both to the trustee's general counsel and to counsel hired for

specified, limited purposes.  This Code provision sets forth a two-part test governing the employment.  The attorney must (i) "not hold or represent an interest adverse to the estate" and (ii) be "disinterested." 11 U.S.C. § 327(a); *In re West Delta Oil Co., Inc.*, 432 F.3d 347, 355 (5th Cir. 2005); *AroChem*, 176 F.3d at 620-21.

While a bankruptcy trustee generally is given broad business discretion to select counsel, *see* 11 U.S.C. § 327(a),[7] subsections (c) and (e) of § 327 of the Bankruptcy Code limit that discretion somewhat.  Subsection (c), directly relevant to this case, provides that a person is "not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."  11 U.S.C. § 327(c).  Thus, disqualification may not be based solely on the professional's prior representation of or employment by a creditor, but subsection (c) "does not preempt the more basic requirements of subsection (a)."  *AroChem*, 176 F.3d at 621 (citing *In re Interwest Business Equip.*, 23 F.3d 311, 316 (10th Cir. 1994)).  Under § 327(c), it "remains important to determine whether

---

[7]     Section 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

the person is disqualified on any other ground, *e.g.*, an interest adverse to the estate." *Id.*
(citation omitted).

The Fifth Circuit "observed that these standards are strict and that attorneys engaged
in the conduct of a bankruptcy case should be free of the slightest personal interest which
might be reflected in their decisions concerning matters of the debtor's estate or which might
impair the high degree of impartiality and detached judgment expected of them during the
course of administration." *In re West Delta Oil*, 432 F.3d at 355 (citing *In re Consolidated
Bancshares, Inc.*, 785 F.2d 1249, 1256 & n.6 (5th Cir. 1986) (internal quotation marks and
citations omitted)). The Fifth Circuit has long been "sensitive to preventing conflicts of
interest" and requires a "painstaking analysis of the facts and precise application of
precedent" when inquiring into alleged conflicts. *Id.* (citing *In re Consolidated Bankshares*,
785 F.2d at 1256). "If an actual conflict of interest is present, 'no more need be shown . . .
to support a denial of compensation.'" *Id.* (citing *In re Consolidated Bankshares*, 785 F.2d
at 1256 (quoting *Woods v. City Nat'l Bank & Trust Co. of Chicago*, 312 U.S. 262, 268
(1941))).

With these general principles in mind, the Court considers the applicable Bankruptcy
Code provisions – § 327(a) and (c). These provisions require *inter alia* that a professional
employed by a trustee not have interests adverse to the estate. To interpret this requirement,
courts have looked to § 327(e) because the latter subsection refers specifically to special
counsel hired for limited purposes and also includes the condition that the proposed "attorney

. . . not represent or hold any interest adverse to the debtor or to the estate."[8]  *See West Delta Oil*, 432 F.3d at 356; *AroChem*, 176 F.3d at 622.  Section 327(e) precludes appointment of special counsel for a trustee if the "adverse interest" is "with respect to the matter on which such attorney is to be employed."  Courts, including the Fifth Circuit, have incorporated into § 327(a) this latter concept that a special counsel's adverse interest is relevant only if that interest relates to the matter on which the special counsel is employed.  *See West Delta Oil*, 432 F.3d at 356; *AroChem*, 176 F.3d at 622.

The debate focuses on what an "adverse interest" actually is.  The Bankruptcy Court in Utah defined "hold an adverse interest to the estate" as follows:

>  (1)     to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
>  (2)     to possess a predisposition under circumstances that render such a bias against the estate.

*In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd in relevant part and rev'd and remanded in part on other grounds*, 75 B.R. 402 (D. Utah 1987).  The Fifth Circuit and other

---

[8]     Section 327(e) provides:

>  The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

>  It is noted that § 327(e) does not govern the present appeal because that Code provision applies when a trustee seeks to hire special counsel that previously represented the debtor, and P&H has never represented CTL.

courts have favorably cited this definition. *West Delta Oil*, 432 F.3d at 354; *AroChem*, 176 F.3d at 623; *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998); *In re Caldor*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996).

"Whether an adverse interest exists is best determined on a case-by-case basis." *Caldor,* 193 B.R. at 172; *accord West Delta Oil*, 432 F.3d at 355, 356 ("While [the *Roberts* formulation may be] helpful, this definition must be employed with an eye to the specific facts of each case, and with attention to circumstances which may impair a professional's ability to offer impartial, disinterested advice to his or her client."). The adverse interest must be material before the conflict requires disqualification. *See In re First Jersey Sec., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999); *Pierce v. Aetna Life Ins. Co. (In re Pierce)*, 809 F.2d 1356, 1362 (8th Cir. 1987).

"The concept of 'adverse interest' has also been articulated in terms of motivation: whether the attorney possesses 'a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors.'" *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987); *see also Pierce*, 809 F.2d at 1362; *In re Consolidated Bankshares*, 785 F.2d at 1256 n.6 (adverse interest is one that "may engender conflicting loyalties"). The *AroChem* court concluded that "where the interest of the special counsel and the interest of the estate are identical with respect to the matter for which special counsel is retained, there is no conflict and the representation can stand." *AroChem*, 176 F.3d at 622 (citations omitted).[9]

---

[9]     The *AroChem* court emphasized this point:  Disqualification is not required "where the interest of the special counsel and the interest of the estate are identical with respect to the (continued...)

Section 327's regulation of the trustee's ability to hire professionals is designed simply to "serve the important policy of ensuring that all professionals appointed [to represent the trustee] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994); *accord AroChem*, 176 F.3d at 621.  "When evaluating proposed retention, a bankruptcy court should exercise its discretionary powers over the approval of professionals in a manner which takes into account the particular facts and circumstances surrounding each case and the proposed retention before making a decision." *AroChem*, 176 F.3d at 621 (citations omitted).  "Relevant considerations are 'the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.'" *In re Vouzianas*, 259 F.3d 103, 107 (2d Cir. 2001) (quoting *AroChem,* 176 F.3d at 621).

Section 327(a) also requires that counsel for the trustee be disinterested.  The disinterestedness requirement overlaps substantially and substantively with the requirement that the attorney not hold or represent any adverse interest. *See AroChem,* at 622-23.  With respect to the "disinterested" requirement, the Court looks first to the Bankruptcy Code's definition in § 101(14)(E).  A "disinterested" person is one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security

---

9        (...continued)
matter for which special counsel is retained." *AroChem*, 176 F.3d at 623; *see Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir. 1993); *In re National Trade Corp.*, 28 B.R. 872, 875 (Bankr. N.D. Ill. 1983).

holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor."  11 U.S.C. § 101(14)(E); *West Delta Oil*, 432 F.3d at 356.  Section 101(14)(E) implicates only the personal interests of the professional whose disinterestedness is questioned.  *See AroChem*, 176 F.3d at 629.  Accordingly, to violate the requirements of § 101(14)(E), the professional personally must "have" the prohibited interest; and the representation of an adverse interest cannot be imputed to the professional.  *Id.*

### 2.  Application of Section 327's Requirements

The Bankruptcy Court did not clearly err in finding that P&H did not have a conflict of interest that disqualified it from serving as special counsel to the Trustee for the limited purpose of investigating and prosecuting avoidance and other claims against entities other than P&H's own clients.  The Bankruptcy Court's ruling was a correct application of the law.

First, the Court looks at whether P&H "holds" any interest adverse to the Debtor or the estate.  St. Paul acknowledges that P&H itself has no such adverse interest.

Next, the Court considers whether P&H currently represents or in the past has represented an interest adverse to the Debtor.  It is this aspect of § 327(a) on which St. Paul primarily rests its arguments.  St. Paul argues that P&H's active representation of eight creditors of the estate creates an actual conflict of interest with P&H's special representation of the Trustee.  While this argument has superficial appeal, it fails when subjected to closer scrutiny.  The Court is unpersuaded that the Bankruptcy Court clearly erred in approving P&H's employment as special counsel to the Trustee.  Given the limited scope of P&H's employment as special counsel and the Bankruptcy Court's order precluding P&H's

investigation and prosecution of claims involving its eight creditor-clients, the Bankruptcy Court properly found that P&H does not have an actual conflict of interest with the Trustee in this case.  Because P&H's employment extends to claims on behalf of the Trustee only in matters involving entities other than P&H's eight creditor-clients, P&H's simultaneous representation of the Trustee and the eight creditors does not present any actual conflict of interest on the matters for which the Trustee retained P&H.

At most, there is a potential conflict of interest here.  St. Paul's characterization of the circumstances as an actual conflict is unpersuasive.  Any conflict of interest of P&H is merely a potential conflict because there have been no avoidance or other claims identified so far against any of P&H's eight creditor-clients.  The Bankruptcy Court requested from the Trustee a report on the status of SCC's investigation into payments by the Debtor to any of the eight P&H creditor-clients.   The Trustee reported that based on SCC's initial determination, none of the eight creditors had received any post-petition payments from the Debtor, and only three of P&H's eight clients had received any transfers within the ninety days preceding the bankruptcy case filing.  SCC and the Trustee have not determined if any of these transfers are subject to avoidance claims under § 547 or whether there are viable defenses to such claims.  The Trustee intends to employ the services of his general counsel to make demand and to sue the P&H creditor-clients if necessary.  Until some viable claim is identified against a P&H client, there is at most the possibility of a conflict.  Before an avoidance claim can be asserted, (i) there must be an identified payment or transfer by the Debtor of money or an asset to a creditor, (ii) the payment or transfer has to have been made

within a relevant statutory time period (post-petition for § 549, ninety days for preferences under § 547, and one year for § 548, or some other relevant time frame for state or non-bankruptcy federal law),[10] (iii) for § 547 or § 548, the Trustee must be able to argue that the payment or transfer lacks appropriate consideration or is for an old debt, and (iv) there are no defenses, or at least no defenses worthy of litigation.

The Bankruptcy Court made the implicit finding that any potential conflict that may be identifiable is too remote to be material.  This finding is not clearly erroneous.  The creditors and the Trustee are generally aligned in regard to the purposes of P&H's employment.  All want P&H to recover substantial sums for the estate in order to pay creditors' claims in this bankruptcy case.

The parties all are relying on SCC rather than on P&H to perform financial analysis of all payments by the Debtor.  St. Paul does not question SCC's objectivity or expertise. St. Paul did not object in any way to SCC's employment as the Debtor's financial advisor early in the case to reconstruct the Debtor's business records.  St. Paul has not objected to SCC's employment to do financial analysis the Trustee needs in order to identify potential avoidance claims as well as assets of the Debtor that may give rise to other federal or state law causes of action.  SCC has become the expert on the Debtor's business dealings, both

---

[10]     Further, P&H stated that, based on the continued incompleteness of the Debtor's business records, P&H did not believe it could meet the burden to prove all the § 548 fraudulent transfer elements against any creditor-defendant because P&H could not sustain the burden of proving pre-bankruptcy insolvency.  For this reason, P&H explained, it had pursued the § 549 post-petition payment claims and plans now to file § 547 preference claims, having obtained a favorable ruling on the construction trust fund issue.

pre-petition and post-bankruptcy filing.  It is primarily the duty of SCC to determine what payments were made by the Debtor.  SCC organized the Debtor's records, a vitally important step because the records were in complete disarray at the time the bankruptcy case was filed. Once SCC identifies the Debtor's payments to creditors other than P&H's eight clients, SCC and P&H will evaluate the viability of litigation to recover the monies and P&H will litigate the claims with SCC's technical financial assistance.  Significantly, under the Employment Order, SCC and P&H must inform the Trustee of all possible claims—whether or not they choose to pursue them.

Thus, there is at best only a potential conflict of interest between P&H and the Trustee based on the conceivable existence of some claim against P&H's clients.  Further, as a practical matter, because St. Paul raised this issue, the Trustee and his employed professionals are likely to give more careful review to the payments to these eight creditors than to any others.  As a result of P&H's full disclosure, the Trustee knows he has the obligation to review the Debtor's records closely and to pursue any viable claims against the eight creditors.  The Trustee may obtain SCC's assistance and that of his general counsel, or may seek approval to hire other separate professionals for this work.

Another reason that any potential conflict is extremely remote is that P&H and SCC are paid for work in this case only if they collect monies for the estate.  Their compensation is directly contingent on success in the cases they identify and file.  "The interest of the special counsel and the interest of the estate are identical with respect to the matter for which special counsel is retained." *AroChem*, 176 F.3d at 623.  The dual appointment of P&H and

SCC with SCC responsible for financial analysis of the Debtor's records, insures that P&H will not be able to protect its creditor-clients from avoidance claims, should any be found viable by SCC and/or by the Trustee or his general counsel.  In sum, because of the Bankruptcy Court's carving out factual and claim analysis concerning P&H's eight creditor-clients, there is no evidence of any actual or potential conflict between P&H's representation of those creditors and the Debtor or Trustee in connection with P&H's employment as special counsel for the Debtor to prosecute actions against non-client entities.

St. Paul's concern is fundamentally about the "appearance of a conflict of interest." St. Paul complains that the creditors and the public will lack faith in the bankruptcy process if P&H is allowed to serve as the Trustee's special counsel.  This concern harks to an early comment by the Court inquiring whether P&H might "pull its punches" in identifying creative avoidance or other theories, or might hesitate to take a particular position on an issue because the claim or position might harm a creditor P&H represents if the Trustee sued that creditor.  The concern about potential issue conflicts or the "appearance of a conflict" is legally insufficient to warrant disqualification.  *See In re First Jersey Sec., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999); *In re Marvel Entertainment Corp.*, 140 F.3d 463, 476 (3d Cir. 1998); *see also In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir. 2002).

In any event, a close review of the Bankruptcy Court record, the parties' oral argument, and further detailed legal analysis reveals that this concern exists, if at all, only at the most superficial and speculative level.  The parties have been unable to identify any

specific issues on which this concern could possibly play out.[11] St. Paul eventually suggested that P&H might hold back on proof of insolvency in order to benefit one of its clients if sued for a fraudulent transfer.  As noted above, this concern is far-fetched under the facts presented here, given that P&H is relying on the presumption of insolvency and all parties apparently are unable to meet the burden of proof on insolvency in light of the Debtor's missing and confusing business records.

Most significantly, there is in reality no appearance of conflict at all.  P&H cannot work on any claims regarding its eight clients, either to prosecute or defend against those claims.  It is SCC that has primary responsibility for identifying all payments by the Debtor (pre- and post-petition) as well as potential avoidance claims.  SCC, being paid on a contingency arrangement, has obvious and strong incentive to identify and pursue as many and as large avoidance claims as possible, as does P&H.  SCC is a very experienced and well regarded expert in bankruptcy and financial matters.  No party has suggested any basis to impugn SCC's commitment to this employment to maximize the Trustee's recovery, or SCC's integrity, independence or objectivity.

The Trustee's representations to the Bankruptcy Court (and to this Court) that these matters are under close review satisfies the requirements of § 327(a) that P&H not have any

---

[11]     The Court concludes that the issue conflict concern in this case is no greater than where a law firm represented a creditor client in one case and a debtor client in a different case.  Such an inchoate concern is insufficient to result in disqualification.

interest adverse to the Debtor.[12]  In sum, the Bankruptcy Court's finding that granting the Trustee's request for appointment of P&H as special counsel to prosecute avoidance and other actions as being in the best interests of the Debtor and Trustee was not clearly erroneous.  That court's implicit finding that P&H does not possess "a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors" should not be disturbed. Section 327(a) provides no basis to overturn this ruling.[13]

**B.      Section 328(a) – P&H's Employment on a Contingency Fee Basis**

A trustee is given great latitude in the employment of counsel.  *In re Interamericas, Ltd.*, 321 B.R. 830, 833 (Bankr. S.D. Tex. 2005); *In re Caldor*, 193 B.R. 165, 170 (Bankr. S.D.N.Y. 1996).  Under § 328, a trustee is entitled to employ an attorney on any "reasonable terms," including a contingency fee basis with the court's approval.  11 U.S.C. § 328(a).

The Trustee negotiated a "stair-step" contingency fee with P&H and SCC jointly.  The fee percentage is based on the status of the litigation when it is concluded.[14]  In approving the Trustee's motion, the Bankruptcy Court deferred to the Trustee's business judgment. The Bankruptcy Court's determination that retaining counsel on a contingency fee basis was the only realistic alternative in this case was not clearly erroneous.  The Trustee explained

---

[12]     As a practical matter, there is little if any opportunity for P&H to exercise judgment in contravention of the Trustee's interest.

[13]     As provided for in the Bankruptcy Court order and as discussed at oral argument, St. Paul retains the right following this appeal to challenge any ***specific*** representation by P&H should an identifiable actual conflict arise in the future.

[14]     *See* note 3 *supra*.

that there was significant uncertainty of recovery in this bankruptcy case because of the disarray of the debtor's records, a point St. Paul does not dispute.  This Court cannot conclude that the Bankruptcy Court clearly erred in these factual findings and the decision to approve a contingency fee arrangement.  If P&H and SCC collect nothing, the Trustee and the estate have little or no expenses of the litigation.  P&H and SCC agreed to bear the cost of organizing the debtor's records.   Because of the contingency fee contract, these professionals' interests are perfectly aligned with the debtor's.   Further, the Bankruptcy Court's findings that the contingency fee percentages were fair and reasonable is not clearly erroneous.

It would have been helpful for the Trustee to describe thoroughly his efforts to retain other counsel, or any discussions with P&H regarding any non-contingent fee arrangement. But the Trustee, P&H and SCC are very experienced in complex bankruptcy matters, and the concept of hourly billing is not foreign to them.   Had they wanted to agree to a non-contingency alternative, each knew how to do so.  The fact that they agreed on a contingent fee contract is an indication that the parties deemed that arrangement financially favorable to both.  The record supports the Bankruptcy Court's assessment that the Trustee exercised reasonable business judgment in proposing the contingency fee plan he negotiated.  St. Paul's arguments to the contrary are unpersuasive.  There is no basis to overturn the Bankruptcy Court's approval of a contingency fee arrangement under § 328(a).

IV.    **CONCLUSION AND ORDER**

The Bankruptcy Court's findings that P&H did not have a conflict of interest and that Court's decision to approve P&H as special counsel to the Trustee to pursue avoidance and other claims was not clearly erroneous.  The finding that P&H and SCC's contingency fee arrangement is in the best interest of the estate is also not clear error.   Accordingly, it is hereby

**ORDERED** that the Bankruptcy Court's August 18, 2005 Order as modified on August 31, 2006, authorizing the retention of Porter and Hedges, L.L.P. is **AFFIRMED**. The Court will issue a separate Final Order.

SIGNED at Houston, Texas, this **30th** day of **May, 2006.**

Nancy F. Atlas
United States District Judge